Anne Andrews, Esq. (SBN: 103280)
Sean T. Higgins, Esq. (SBN 266888)
Kimberly DeGonia, Esq., (SBN 256989)
Ryan M. McIntosh, Esq. (SBN: 328042)
**ANDREWS & THORNTON**
4701 Von Karman Ave., Ste 300
Newport Beach, CA, 92620
Tel.: (949) 748-1000
Fax: (949) 315-3540
survivor@andrewsthornton.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE<br><br>          Plaintiff,<br><br>   v.<br><br>DOE 1 (a corporation),<br>and DOES 2-500, Inclusive,<br><br>        Defendants. | **CASE NO.: 2:25-cv-00711**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **Sexual Abuse of a Minor (Against DOE 1, and DOES 2-500)**<br>2. **Negligence (Against DOE 1, and DOES 2-500)**<br>3. **Negligent Infliction of Emotional Distress (Against DOE 1, and DOES 2-500)**<br>4. **Negligent Hiring, Supervision, and Retention of an Unfit Employee (Against DOE 1, and DOES 2-500)**<br><br>**DEMAND FOR JURY TRIAL** |

1.      Plaintiff JANE DOE by and through her attorneys, Andrews & Thornton, Watts Law Firm, bring this action against Defendants DOE 1 (a corporation), and DOES 2-500.

2.      Defendant DOE 1 ("DOE 1") has for decades been overcome by an epidemic of sexual abuse perpetuated by a culture of non-reporting, perverse messaging, and woefully inept responses to abuse. Time and again, DOE 1 claims to prioritize victims, yet fails to enforce policies that actually accomplish that endeavor.

3.      The church appears to prioritize its image and profits over care and protection for victims of sexual abuse. DOE 1 is one of the richest corporations in the world, and the

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

consequence of that commercial focus is devastating for the hundreds-- if not thousands-- of victims of childhood sexual abuse, like Plaintiff herein, at the hands of leaders of DOE 1's obsession with reputation and money over the protection of sex abuse survivors further endangers members. When survivors are told by every leader in their community, including their L.D.S. therapists, that they should forgive their abusers, ignore blatant abuse, and be grateful that all they had to do to find their faith was endure the sexual abuse, the trauma they endured is replicated a hundredfold and becomes that much more difficult to recover from. This case is about one such child who was adopted by DOE 1 members at two years old for the purpose of becoming her adoptive father's third polygamist wife—after her adoptive mother and older sister. From the time she was baptized into DOE 1 at 9 years old, she was threatened, harassed, intimidated, and brutally sexually abused, masturbated, groped, kissed, fondled, forced to perform oral copulation, and raped thousands of times by her father, a highly involved member of the DOE 1 in Lancaster, California, and Cave Junction, Oregon.

4.     On numerous occasions DOE 1 had knowledge—constructive or otherwise—of JANE DOE's abuse. The inappropriateness of the relationship between JANE DOE and her adoptive father was so obvious that it became a running joke amongst members that she was her father's "other wife." Furthermore, Perpetrator had already sexually abused his oldest daughter for her lifetime—she was 22 at the time of JANE DOE's adoption—adding two decades to the period in which Perpetrator's insatiable, perverse, violent, predatory, and deviant sexual behavior should have been recognized and reported on by DOE 1. In addition, JANE DOE's mother would violently beat and kick her, leaving visible bruises on JANE DOE's body. Yet, DOE 1 never trained or encouraged its leadership to recognize signs of sexual abuse, especially in children, for fear that singling out instances of abuse would jeopardize the corporation's sterling reputation.

5.     JANE DOE escaped her abuser at 17 years old, when she fled to a neighbor's home for fear of her niece being next in line for abuse, and out of shame knowing that the God she believed in would not condone the abuse she was enduring.

6.     Subsequently, the neighbor called appropriate authorities, including local police, and her abuser was convicted of statutory rape.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

7.     JANE DOE left Oregon to live in California with her other sister, where she received mandatory counseling from L.D.S. Family Services and her local bishop, both of whom further traumatized her dramatically due to their lack of understanding of sexual abuse and incest.

## PRELIMINARY STATEMENT

8.     JANE DOE's adoptive father, the Perpetrator, had a decades-long history of sexual abuse before abusing Plaintiff. Upon information and belief, DOE 1 knew of Perpetrator's deviant, pedophilic sexual history and yet it continued to hold Perpetrator in high esteem as a priest in the DOE 1 and Financial Secretary in the Bishopric.

9.     Upon information and belief, DOE 1 had previously received reports that Perpetrator had abused other children, including his eldest daughter. Upon information and belief, DOE 1 disregarded the red flags Perpetrator gave, showing he posed a danger to other children in the ward, including his adoptive daughter. Instead, Bishops, stake presidents, home teachers, relief society members, and other leaders followed the DOE 1 playbook in turning a blind eye to signs of abuse that could mar the reputation of DOE 1.

10.    Perpetrator adopted JANE DOE for the purpose of using her as his third spiritual polygamist wife, and to use as a live-in sex slave. JANE DOE experienced extreme sexual abuse from her father approximately three times per week from the time she was 9 years old. The abuse began after her baptism into DOE 1's organization —a process done at a time when DOE 1 teaches members are essentially adults. At that time, he performed a mock-wedding service between them in the chapel at their ward in California where she was told he now had the authority to touch her however and whenever he wanted. By the time she was 12 years old, they moved to a rural part of Oregon where the abuse escalated, and he began raping her a minimum of three times per week.

11.    JANE DOE was constantly petrified that she would be impregnated by her father and carried deep shame and disgust because of the sexual acts he would force her to perform.

12.    The inappropriateness of the relationship between JANE DOE and her father was noticeable to all who encountered them. JANE DOE was never allowed out of her father's reach,

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

and he maintained at least one hand on her at all times. JANE DOE was visibly repulsed and scared of her father's touch.

13.    Members of JANE DOE's ward would openly make fun of JANE DOE, stating she was her father's "second wife."

14.    Perpetrator abused JANE DOE at every possible opportunity, including countless times on DOE 1 properties, at DOE 1-sponsored events, and sometimes in the presence of others if he believed he could get away with it thanks to the L.D.S.  CORP.'s pattern and practice of turning a blind eye to abuse.

15.    There were many signs that JANE DOE was the victim of abuse, however no one from the community seemed to recognize or report it to appropriate authorities. When the abuse began, JANE DOE became noticeably fearful of her perpetrator, and often appeared despondent, shameful, and shy when she and her father were in the presence of others. She never spent time with other children and instead remained at her father's side at all times. In addition, her father would respond on her behalf in conversations, further isolating her from others even when in their presence.

16.    JANE DOE was a highly involved and devoted member of DOE 1, yet she only went on a singular temple trip as a child. Had any person noticed and asked her why she did not join, she would have told them of the abuse and how it made her feel unworthy to enter such a holy place.

17.    JANE DOE's mother added to JANE DOE's abuse out of jealousy and misplaced hatred. JANE DOE's mother testified at trial that as a 4 year old, JANE DOE "pranced in and seduced [her mother's] husband." In retaliation for JANE DOE's status with Perpetrator, JANE DOE's mother would beat her, kick her, slap her, berate her, and otherwise punish her for receiving Perpetrator's attention.

18.    Perpetrator used his position in DOE 1 as the Executive Secretary of Finance in the Bishopric, a Priest, an Elder, and as her spiritual husband to silence and maintain control over JANE DOE.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

19.    Perpetrator made constant threats of violence against JANE DOE, including that he would kill her and all of her loved ones with one of his many hunting rifles if she ever disclosed the abuse to anyone.

20.    Perpetrator often used church teachings on polygamy to further manipulate Plaintiff into submission and silence, telling JANE DOE that according to their religion, she owed him her life, she would be bound to him for eternity, and he owned her. He further justified his actions by instructing JANE DOE that it was righteous to practice polygamy.

21.    Upon information and belief, the DOE 1 community in Cave Junction, Oregon, was a hotbed for sexual deviance and specifically an acceptance of polygamist practices because of its remote location. Upon information and belief, numerous other sexual predators were hidden within the DOE 1 community in Oregon. Upon information and belief, Perpetrator moved his wife and JANE DOE to Cave Junction, Oregon, in order to take advantage of this open secret.

22.    When JANE DOE was 17 years old, she mustered the courage to escape her abuser, fleeing to the home of a neighbor in Oregon who subsequently reported the abuse to local police. JANE DOE's abuser, Perpetrator, was charged and eventually convicted of statutory rape.

23.    After spending months in the foster care system, JANE DOE moved to California to live with her older sister for a year. While there, JANE DOE confided in her bishop, who required that she receive mental health counseling through L.D.S. Family Services in Huntington Beach, California. However, JANE DOE's bishop arranged for therapy through L.D.S. Family Services in response to JANE DOE's potential claims against DOE 1, he nor any agent of DOE 1 informed JANE DOE of the statute of limitations for any of those potential legal claims.

24.    JANE DOE's treatment in L.D.S. Family Services was significantly retraumatizing, as each counselor reflected the overarching message of the church—that the image of goodness is more important than the reality of it.

## JURISDICTION AND VENUE

25.    This Court properly has diversity jurisdiction to hear civil claims where complete diversity between plaintiffs and defendants exists and the amount in controversy exceeds

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

$75,000, pursuant to 28 U.S.C. § 1332(a). DEFENDANT DOE 1 and JANE DOE are domiciled in different states and the amount in controversy is sufficient.

26.   Venue in this Court is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and Defendants are subject to personal jurisdiction in this District.

27.   State law causes of action I through IV are timely brought pursuant to California Insurance Code §11583, which requires corporations that have provided payment or partial payment as an accommodation to an injured person to, at the time of beginning payment, notify the recipient of the payment in writing of the statute of limitations applicable to the cause of action for which the payment is being made. Counseling services through L.D.S. Family Services qualify as such payment necessitating notice of the applicable statutes of limitations. Without such written notice to the Plaintiff of the statutes of limitations, California Insurance Code §11583 provides for "tolling of the statute of limitations from the date of the advance payment to the date on which the claimant retains counsel or the date upon which the statutory notice is given, whichever comes first."

28.   JANE DOE was never informed in writing or otherwise of the statutes of limitations for each of her causes of action. Therefore, the statute of limitations for her claims in response to the sexual abuse have been tolled since the year she received treatment from DOE 1 until she obtained legal counsel or otherwise received written notice of the statute of limitations for her claims by DOE 1.

29.   Because JANE DOE received treatment as payment while she was a minor, her statutes of limitations on any related action had not yet begun to run. Since then, she has not received notice of the applicable statutes of limitations in writing from DOE 1. Therefore, her full statutes of limitations for each action herein alleged have been tolled until 2024 upon obtaining legal counsel.

**THIS IS AN ACTION FOR CHILDHOOD SEXUAL ABUSE BROUGHT PURSUANT TO CODE OF CIVIL PROCEDURE ("CCP") § 340.1, SUBDIVISION (A)-(D) AND ANY OTHER APPLICABLE STATUTE.**

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**DEFENDANT PARTIES**

I.    **DOE 1**

30.    DOE 1 is a corporation duly organized and operating pursuant to the laws of the State of Utah, with its principal place of business at 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150. The true name of Defendant DOE 1 is known to PLAINTIFF, but they are named as a DOE defendant pursuant to Code of Civil Procedure §340.1.

31.    DOE 1 operates meeting houses, congregations, and temples (wards, stakes and areas) within the state of California. In addition, DOE 1 collects tithes, accepts donations, invests money, and covers up childhood sexual abuse in the state of California. Specifically, this Court has specific personal jurisdiction over DOE 1 arising out of the facts alleged herein: the sexual abuse. As alleged herein, by retaining and obtaining additional tithes, donations and profits from congregants in California as a result of the coverup of Plaintiff's abuse, DOE 1 purposefully availed itself of the privilege of conducting activities within California, thus invoking the benefits and protection of its laws. This case, and PLAINTIFF'S injuries alleged herein, directly arise out of DOE 1's activities that took place in California.

32.    A significant percentage of DOE 1's income comes from member tithes, some of which are used for traditional administrative functions and charitable purposes. However, a large percentage of DOE 1's income also comes from other financial commitments above and/or separate from tithes. Unbeknownst to most congregants and the public until recently, DOE 1 uses income from both tithing and other financial contributions from congregants for strictly commercial enterprises, including financial investment vehicles like stock, real estate, and other profit-generating market endeavors. In 1997, DOE 1 created a non-profit entity called Ensign Peak Investments whose articles of incorporation specify that it is organized exclusively for religious, educational, and charitable purposes. Ensign Peak Investments benefited from tax exemptions pursuant to § 501(c)(3) of the Internal Revenue Code. Despite this, based on information and belief, Ensign collected donations and tithes for more than two decades, without ever disbursing the funds towards any charitable purpose. Upon information and belief, DOE 1 benefited from Ensign's non-profit status by receiving billions of dollars in tax breaks from the

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

interest of investments, without doing anything charitable, religious, or educational. DOE 1 does not provide information about their finances to their members or the public. Upon information and belief, DOE 1 receives more than seven (7) billion dollars a year in tithing from members. Upon information reported publicly in the media, DOE 1 owns financial assets and real estate in excess of 200 billion dollars.

**II.    DOE DEFENDANTS 1-500**

33.    The true names or capacities, whether individual, corporate, or otherwise, of Defendants DOES 1 through 500, inclusive, are unknown to Plaintiff who is therefore ignorant of the true names and sue said Defendants by such fictitious names. Plaintiff believes and alleges that each of the Defendants designated herein by fictitious names is in some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiff as alleged herein. The true names, whether corporate, individual or otherwise, of Defendants 2 through 500, inclusive, are presently unknown to Plaintiff, which therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

34.    At all times hereinafter alleged, "DEFENDANTS" or "All DEFENDANTS" include all herein named Defendants as well as Defendants DOES 2 through 500, inclusive.

35.    At all times herein alleged, each of the DEFENDANTS was the agent, servant, partner, aider and abettor, co-conspirator and joint venturer of each of the remaining DEFENDANTS herein and was at all times operating and acting within the course, purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture and rendered substantial assistance and encouragement to the other DEFENDANTS, knowing that their conduct constituted a breach of duty owed to Plaintiff and unlawful harm to Plaintiff.

## **PLAINTIFF**

36.    JANE DOE was a resident of Lancaster, California from 1965 until 1972, when she became a resident of Cave Junction, Oregon. She remained a resident in Cave Junction, Oregon, until 1980 when she moved to Huntington Beach, California. JANE DOE attended a ward in Lancaster, California, and subsequently joined a ward in Cave Junction, Oregon. A ward

is a local congregation of DOE 1 members. A stake is made up of multiple wards, generally between five to ten wards.

37.    At the time of filing this Complaint, Plaintiff is a resident of the state of Oregon.

**FACTUAL BACKGROUND**

*DOE 1 Is a Profiteering Commercial Enterprise that Covers Up and Enables Abuse to Protect Its Wealth and Reputation*

38.    The case is not about religious or doctrinal beliefs in any way. This case is about an organization that failed to recognize and report a serial sexual predator who abused children as young as 9 years old and used L.D.S. historic teachings to justify the abuse.

39.    In 2017, a lengthy expose compiled by a child abuse health researcher was released online. The 300-page document details hundreds of instances of sex abuse within DOE 1 taken primarily from public court filings. The research is an eye-opening look into the pervasiveness of childhood sexual abuse in DOE 1 and their inadequacy in responding to it. A common theme emerges of ward bishops and leaders being given information of child sexual abuse in the ward, information which is then passed along to DOE 1 and nothing is done. No one is told. And the abuse continues.

40.    In the rare circumstance a report is made to the authorities, DOE 1 still diminishes, denies, and conceals evidence of the abuse and their knowledge of it from DOE 1 members, authorities, and the public at large. Members are sent to L.D.S. Family Services to be gaslit and silenced.

41.    In JANE DOE's case, she was instructed by the many male therapists she was required to speak to with L.D.S. Family Services that she should be grateful that she endured the incestuous sexual abuse because it was her adoption that brought her to DOE 1's faith.

42.    JANE DOE was further subjected to DOE 1 tactics in therapy when her therapists harassed and manipulated her into participating in family reunification programs with her incestuous father, who was then a known child abuser convicted of statutory rape.

43.    That the abuse was reported to authorities at all was a miracle. DOE 1 maintains a pattern and practice of concealing abuse from the authorities, and signals that its members

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

should conceal and/or fail to report abuse so as to keep "the DOE 1 from being inappropriately implicated in legal matters." See President Russell M. Nelson Letter (August 4, 2020). Through this policy of concealment, DOE 1 ratifies abusive conduct, perpetuating a culture of concealment and encouraging a lack of cooperation among DOE 1 members with law enforcement. This case is no different.

44.    DOE 1 is well known for its meticulous record keeping. DOE 1 maintains an archive of records at Granite Mountain Records Vault located in the foothills surrounding the Salt Lake Valley in Utah. These records detail important circumstances surrounding individual members. Reports are created and maintained at individual wards that detail membership attendance, genealogy of members, addresses of members, reports of abuse, and reports regarding disciplinary proceedings. These records are then sent from the individual wards to the record archives that are maintained in the greater Salt Lake City area in Utah. The records and custom and practice of maintaining records require an individual record for each member. The disciplinary records are comprehensive and detailed, per the practices of DOE 1.

45.    DOE 1's written policies shed light on their general priorities. According to the DOE 1's General Handbook, "The purposes of DOE 1 discipline are (1) to save the souls of transgressors, (2) to protect the innocent, and (3) to safeguard the purity, integrity, and good name of the Church. These purposes are accomplished through private counsel and caution, informal probation, formal probation, disfellowshipment, and excommunication." See pgs. 93-95. The Stake Presidents and Bishops Handbook states as follows: "[i]n instances of abuse, the first responsibility of the Church is to assist those who have been abused, and to protect those who may be vulnerable to future abuse."

46.    More specifically, DOE 1 notes in its administrative handbook that the second purpose of Church discipline is to protect the innocent. Yet, perpetrators go undisciplined until discipline is made necessary by an external force. Disclosure of the identity of others who participated in a transgression may be required when it is necessary to restore or protect persons who have been or may be seriously injured as a result of the transgression. DOE 1's position is that abuse cannot be tolerated in any form. Abusers should not be given Church callings, which

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

are positions of service that members are appointed to through revelation and the Spirit. Additionally, abusers may not have a temple recommend, which signifies that a member can enter the temple. Even if a person who abused a child sexually or physically receives Church discipline and is later restored to full fellowship or readmitted by baptism, leaders should not call the person to any position working with children or youth unless the First Presidency authorizes removal of the annotation on the person's membership record. The First Presidency is the highest governing body in DOE 1 and consists of a prophet and two prophet counselors.

47.    DOE 1's written policies may look congruent with reasonable care on their face. However, a quicky look reveals that they are sorely lacking. Nevertheless, the policies they put into practice diverge significantly from even those written in its Handbook.

48.    DOE 1 maintains a national Helpline that purports to assist victims in reporting their sexual assaults. However, DOE 1 implements the Helpline not for the protection and counseling of sexual abuse victims, as professed in DOE 1 literature, but for Kirton McConkie attorneys to snuff out complaints and protect DOE 1 from potentially costly lawsuits and jury verdicts. This is consistent with the instructions set forth in President Russell M. Nelson Letter, dated August 4, 2020, encouraging congregants to avoid cooperating with authorities asking for information on abuse.

49.    In conjunction with the doctrine of helping victims, Utah's Supreme Court has characterized the Helpline used by DOE 1 as "a 1-800 number that bishops and other DOE 1 clergy can call when they become aware of possible abuse. The Help Line is available 24 hours a day, 365 days a year and is staffed by legal and counseling professionals who 'provide guidance to the bishop on how to protect the [victim] from further abuse, and how to deal with the complex emotional, psychological, and legal issues that must be addressed in order to protect the victim.'" MacGregor v. Walker, 2014 UT 2 ¶2,322 P.3d 706, 707 (2014) [internal citation omitted in original].

50.    In reality, DOE 1 primarily staffs the Helpline with attorneys of Kirton McConkie, one of the largest law firms in the State of Utah. Rather than notifying law enforcement or other government authorities when Bishops and other clergy members call the Helpline regarding

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

sexual abuse within DOE  1 Helpline operators transfer these calls to the Kirton McConkie attorneys, who advise the caller not to report the abuse incident to law enforcement, misrepresenting clergy-penitent privilege laws as their reasoning.

51.    In another sexual abuse-related civil lawsuit against the Mormon DOE  1 and its agents, a Kirton McConkie attorney "acknowledged during a pretrial deposition that the firm uses information gleaned from helpline calls to identify cases that pose a high financial risk to the Mormon Church" See The Mormon Church Has Been Accused of Using a Victim's Hotline to Hide Claims of Sexual Abuse (https://www.vice.com/en/article/duty-to-report-the-mormon-church-has-been-accused-of-using-a-victims-hotline-to-hide-sexual-abuse-claims/).

52.    The Sins of Brother Curtis recounts the horrific details of DOE  1's systemic failure to address known predators in its leadership. Lisa Davis, The Sins of Brother Curtis (2011). Brother Curtis was an elder in DOE  1, a position attained by most men after a worthiness interview by the stake president -the leader of a group of local congregations. Despite spending numerous years in prison for crimes he committed prior to joining DOE  1, he was deemed worthy to hold the position of an elder. Countless DOE  1 leaders learned of Brother Curtis' tendencies to molest children but failed to report him or inform their congregants. Brother Curtis sexually abused at least twenty (20) minors over a 14-year span. Despite leaders within DOE  1 knowing of Brother Curtis' proclivity for sexually abusing minors, DOE  1, as part of a national conspiracy spanning decades, moved Brother Curtis from a ward in Oregon to Wyoming back to Oregon then to Michigan and finally back to Oregon. At one point, Brother Curtis had been excommunicated but was permitted to be rebaptized into DOE  1 where he continued to sexually abuse minors.

53.    Perpetrator sexually abused other children not named as a plaintiff in this lawsuit. Upon information and belief, DOE  1 was aware of Perpetrator's abuse and yet he was allowed to continue serving in the Bishopric as Executive Secretary of Finance and even as a leader on youth camping trips.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

54.    Until JANE DOE escaped Perpetrator and reported her abuse directly to a neighbor, Perpetrator was never disciplined for his sexual deviance and pedophilic predatory behavior.

55.    JANE DOE has never recovered from the abuse she experienced throughout her childhood.

*DOE 1 Failed to Protect PLAINTIFF and Enabled the Horrendous Abuse to Continue*

*Beyond Perpetrator's First Reported Victims*

56.    Upon information and belief, Perpetrator sexually abused other children for more than 20 years before sexually abusing Plaintiff, including his eldest biological daughter, who was 22 years older than her adopted sister.

57.    Perpetrator was an esteemed and valuable member of the DOE 1 community, holding leadership positions with youth and in the Ward's finances. DOE 1 proceeded to turn a blind eye and a deaf ear to as many of the actual and constructive warnings it was receiving for decades regarding Perpetrator's abuse of children, especially his two daughters.

58.    Had it been made public knowledge that the Executive Secretary of Finance at the ward was an incestuous and sadistic pedophile, the DOE 1 would have certainly lost donations, membership, and most significantly, willing members to perform the free labor on which the DOE 1 sustains itself. Therefore, upon information and belief, the DOE 1 covered up and ignored the abuse.

59.    DOE 1's purported policy to "protect victims" is a farce. DOE 1 is far more interested in protecting its financial commitments and the appearance of its moral reputation. This case is the perfect example, DOE 1 could and should have prevented Perpetrator decades earlier from interacting with other children, including his daughter, when initial allegations were made. Furthermore, members of the congregation—at the very least, members who were parents to children—should have been informed of the threat to children's safety, so they could have responded in an appropriate manner to protect their children and identify potential signs of abuse. At the very least, these disclosures could have warned the WARD of Perpetrator's past and would have led to more robust and better-informed investigations by law enforcement much earlier on.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

The reality is that every abuse victim—especially given the extremely young age and unique vulnerability of the Plaintiff in this suit—holds valuable and irreplaceable information that law enforcement needs in order to identify the perpetrator, identify the root cause of the unlawful acts, and identify other potential victims.

60.    Upon information and belief, by wrongfully failing to make an earlier report to law enforcement based on the more than 20 years of PERPETRATOR's prior sexual abuse, DOE 1 prevented law enforcement from investigating sooner, which would have produced evidence of Perpetrator's calculated and perverted sexual abuse of children.

61.    Instead, DOE 1 allowed Perpetrator to continue completely unhindered and even protected his predatory conduct. DOE 1, its agents, and employees, including bishops, counselors, or personnel mentioned herein, DOES 1- 500, and each of them, acted to protect the heinous and unforgivable acts of its member, Perpetrator, and in such action taken against PLAINTIFF'S innocence and vulnerabilities, were careless, reckless, negligent, and consciously disregarding a minor's rights.

## PUNITIVE DAMAGES ALLEGATIONS

62.    PLAINTIFF repeats and re-alleges the allegations set forth in the above paragraphs 1-54 as though fully set forth herein.

63.    At all times herein, DEFENDANTS knew or should have known of Perpetrator's history of child sex abuse. DOE 1 acted with reckless indifference for every child in the WARD and in California and Oregon when they failed to report out, warn, or take any affirmative steps to protect children from Perpetrator. As a result of DOE 1's deliberate inaction, numerous children were endangered by Perpetrator.

64.    Despite prior knowledge of Perpetrator's predatory behavior, DOE 1 maintained Perpetrator as a member in good standing with the corporation until 1980 when JANE DOE ran away from her home to escape the torment, allowing Perpetrator to perpetrate abuse for decades without repercussions. As alleged herein, each of the DEFENDANTS and its agents played a role in enabling Perpetrator to abuse PLAINTIFF. This action by DOE 1 exceeded malicious and oppressive conduct against PLAINTIFF.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

65.    Such conduct is willful, wanton and reckless, justifying an award of punitive damages in an amount to be proven at trial.

<u>COUNT I</u>

**SEXUAL ABUSE OF A MINOR**

**(Against DOE 1 and DOES 2-500)**

66.    PLAINTIFF incorporates by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

67.    While PLAINTIFF was a member of the DOE 1's community and reliant upon DOE 1, Perpetrator used his position of authority in DOE 1 as the Executive Secretary of Finance in the Bishopric, a Priest, an Elder, and as JANE DOE's spiritual husband to silence and maintain control over JANE DOE. This tactic included performing pseudo-religious rituals in the chapel to more effectively command JANE DOE's obedience and silence.

68.    Perpetrator did this to sadistically, violently, and incestuously sexually abuse and control PLAINTIFF JANE DOE for at least eight years of her childhood. This included molestation, groping, fondling, oral copulation, kissing, masturbation, rape, and other harmful misconduct with PLAINTIFF. PLAINTIFF did not consent to the acts, nor could PLAINTIFF have consented to the acts given her young age at the time of the abuse.

69.    Upon information and belief, DOE 1 ratified Perpetrator's sexual abuse of PLAINTIFF because DOE 1 had knowledge through earlier reports of his abuse, yet DOE 1 leadership intentionally disregarded these warnings.

70.    As a direct and legal result of the sexual abuse by Perpetrator, JANE DOE experienced physical, emotional and psychological injuries for which she is entitled to monetary damages and other relief.

71.    DOE 1's action amounted to malicious and oppressive conduct because DOE 1 knowingly harbored a known sexual predator and placed him in positions of authority over minor congregants. DOE 1 was in a position to prevent PLAINTIFF from being sexually abused but instead looked the other way out of convenience and preserving the reputation of DOE 1.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

72.     The conduct of DOE 1 was wanton, malicious, willful, and/or cruel, as a result, PLAINTIFF is entitled to punitive damages.

## COUNT II

### NEGLIGENCE

### (Against DOE 1 and DOES 2-500)

73.     PLAINTIFF incorporates by reference each and every prior allegation as though fully set forth and brought in this cause of action.

74.     DEFENDANTS are persons or entities who owed a duty of care to the PLAINTIFF or had a duty to control the conduct of the perpetrator by way of the special relationship existing between those individuals.

75.     DEFENDANTS knew or should have known of Perpetrator's violent misconduct and inappropriate sexual behavior directed by Perpetrator to minor PLAINTIFF, as numerous members of DOE 1 witnessed Perpetrator physically and emotionally abuse PLAINTIFF on multiple occasions.

76.     DEFENDANTS knew or should have known of Perpetrator's unlawful sexual behavior directed towards PLAINTIFF when they saw Plaintiff's fear of Perpetrator, her uncharacteristic disinterest in attending Temple, and the abnormality of Plaintiff and Perpetrator's relationship so obvious that it became a constant joke that Plaintiff was Perpetrator's second wife. Furthermore, Defendants should have known of Perpetrator's unlawful, violent behavior because he had been doing it for more than 20 years before Plaintiff.

77.     Despite having knowledge of the misconduct, DOE 1 and DOES 2- 500 failed to take any preventive action to control the conduct, failed to warn, report, and/or confront Plaintiff regarding the abuse, despite having a legal duty to do so.

78.     Despite receiving reports and other constructive notice of Perpetrator's sexually abusing minors, no leader in DOE 1 took any action to prevent further abuse until 1980 when JANE DOE first took action for herself.

79.     36.     As a result of the negligence of DOE 1 and DOES 2-500, PLAINTIFF was sexually abused by Perpetrator for nearly a decade.

16

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

80.     Had Defendants fulfilled their duties and responsibilities to PLAINTIFF in the special relationship it had with minor PLAINTIFF, she would not have been subject to all or most of the misconduct aimed against her.

81.     As a direct and legal result of this conduct, PLAINTIFF suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

82.     Accordingly, at the time Perpetrator and DOES 2-500, inclusive, performed the acts alleged herein, it was or should have been reasonably foreseeable to DEFENDANTS that by continuously allowing PLAINTIFF to continue to live in the care of Perpetrator and his abusive wife, DEFENDANTS were placing PLAINTIFF in grave risk of being sexually assaulted by Perpetrator.

83.     By knowingly subjecting PLAINTIFF to such foreseeable danger, DEFENDANTS were duty-bound to take reasonable steps and implement reasonable safeguards to protect PLAINTIFF and other potential victims from Perpetrator. Furthermore, as alleged herein, DEFENDANTS at all times exercised a sufficient degree of control to prevent the acts of assault by Perpetrator. However, Defendants DOE  1 and DOES 2-500, inclusive, failed to take any reasonable steps or implement any reasonable safeguards for PLAINTIFF'S protection whatsoever, and continued to allow Plaintiff to be assaulted.

84.     DOE  1, by and through its agents, had actual and constructive knowledge of Perpetrator's propensity to sexually abuse minors, but did nothing to protect minor members of DOE  1 against him.

85.     As a direct and legal result of the negligence by DEFENDANTS,

PLAINTIFF JANE DOE experienced physical, emotional and psychological injuries for which she is entitled to monetary damages and other relief.

## COUNT III

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**(Against DOE 1)**

86.    PLAINTIFF incorporates by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

87.    DEFENDANTS are liable for the emotional distress a plaintiff experiences as a result of the breach of a duty of care to the plaintiff where defendants unreasonably endangered the plaintiff's physical safety or caused them to fear for their safety and experience extreme emotional distress. Defendants' actions must be extreme and outrageous.

88.    DEFENDANTS owed a duty of care to PLAINTIFF to protect her from known sexual abusers.

89.    DEFENDANTS unreasonably endangered PLAINTIFF'S physical safety by allowing her to be in direct and frequent contact with a known child sex predator, Perpetrator, who DEFENDANTS were protecting.

90.    Allowing a child to be in direct, unsupervised contact with a known child sex abuser is both extreme and outrageous, and DEFENDANTS knew or should have known that PLAINTIFF would have experienced extreme sexual abuse and emotional distress as a result.

91.    As a direct and legal result of DEFENDANTS' actions and misconduct, PLAINTIFF experienced physical, emotional and psychological injuries for which they are entitled to monetary damages and other relief.

92.    DEFENDANTS' actions amounted to malicious and oppressive conduct because DEFENDANTS knowingly harbored a known sexual predator and placed him in direct contact with other minor congregants in leadership positions. DEFENDANTS were in a position to prevent PLAINTIFF from being sexually abused but took actions to facilitate incidences of sexual abuse by Perpetrator.

93.    DEFENDANTS' conduct was wanton, malicious, willful, and/or cruel, as a result, PLAINTIFF is entitled to punitive damages.

## <u>COUNT IV</u>

**NEGLIGENT HIRING SUPERVISION & RETENTION OF AN UNFIT EMPLOYEE**

**(Plaintiff Against DOE 1 and DOES 2-500)**

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

94.     PLAINTIFF incorporates by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

95.     DOE 1, its agents, and employees, including bishops, clergy, and counselors, and DOES 2-500, had the responsibility and mandatory duty to adequately and properly investigate, hire, train, and supervise its agents and employees who would be working with minors and students to protect the minors within the DOE 1 community from harm caused by unfit and dangerous individuals retained as Financial Clerk and as a youth leader.

96.     Upon information and belief, during the time PLAINTIFF was being sexually abused by Perpetrator, DOE 1 and DOES 2-500 knew of complaints of serious misconduct made against Perpetrator, yet Defendants, and each of them, failed to properly and adequately investigate those complaints and failed to take appropriate disciplinary action against Perpetrator.

97.     Instead, DEFENDANT, and DOES 2-500, ignored the allegations and obvious signs of misconduct.

98.     DEFENDANTS knew or should have known that Perpetrator engaged in repeated misconduct against young members of the community for decades, including PLAINTIFF's sister and PLAINTIFF herself.

99.     DEFENDANTS breached their duty to investigate properly and adequately hire, train, and supervise Perpetrator as a member of the Bishopric on DOE 1 premises.

100.     Had DEFENDANTS properly investigated, supervised, trained, and monitored Perpetrator's conduct and actions, they would have discovered that he was unfit to be employed as a member of the Bishopric, as a youth leader, and would likely have learned enough to begin a police investigation that would have saved JANE DOE from years of abuse, if not the entirety of the abuse.

101.     DOE 1 and DOES 2-500, negligently hired, supervised, retained, monitored, and otherwise employed Perpetrator and negligently failed to ensure the safety of minor community members in the DOE 1 including PLAINTIFF JANE DOE, who was fondled, groped, and raped innumerable times on DOE 1 property during Perpetrator's work hours and while PLAINTIFF was entrusted to DOE 1's custody, care and control.

19

102.    DOE 1 also negligently failed to adequately implement or enforce any procedures or policies that were aimed at preventing, detecting, or deterring the sexual harassment or abuse of minors by members of the priesthood and by members of the Bishopric, such as Perpetrator.

103.    Had DOE 1 and DOES 2-500 performed their duties to monitor, supervise, and/or investigate their leadership and protect their members, PLAINTIFF would not have been subject to most if not all of the sexual abuse and other harmful conduct inflicted upon them.

104.    As a direct and legal result of this conduct, PLAINTIFF suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

///

///

////

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays judgment as follows:

105.    Against each Defendant, non-economic damages according to proof;

106.    Against each Defendant, economic damages according to proof;

107.    Against each Defendant, punitive damages according to proof;

108.    For attorney fees, as permitted by law;

109.    For costs of suit herein; and

For such other and further relief as the court may deem fit and proper.

## JURY DEMAND

PLAINTIFF demands a trial by jury on all issues so triable.


Date: January 27, 2025                              **ANDREWS THORNTON**

By: _____
                                                    Anne Andrews
                                                    Sean T. Higgins
                                                    Kimberly DeGonia
                                                    Ryan McIntosh
                                                    Leilah Rodriguez
                                                    ANDREWS & THORNTON
                                                    4701 Von Karman Ave., Suite 300
                                                    Newport Beach, CA 92660
                                                    Emails:
                                                    survivor@andrewsthornton.com
                                                    aa@andrewsthornton.com
                                                    shiggins@andrewsthornton.com
                                                    kdegonia@andrewsthornton.com


                                                    *Counsel for Plaintiff*

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**